Richard H. HUNDLEY, Sr., Appellant,

v.

Raymond M. MEYER, Trustee, et al.,
Appellees.

Court of Appeals of Kentucky.

May 20, 1955.

H. N. Lukins, Charles E. Keller, Louisville, for appellant.

Peter, Heyburn & Marshall, William H. Crutcher, Jr., Louisville, for appellees.

WADDILL, Commissioner.

This action was instituted by the appellant, Richard H. Hundley, Sr., against appellees, Raymond Meyer, and appellant's daughter, and his four sons. The purpose of the action is to set aside an instrument which appellant executed concerning his property. The court denied the relief sought, but retained the case on the docket during the administration of the trust.

The instrument which appellant signed provides in part as follows:

"* * * the party of the first part hereby conveys in fee simple, with Covenant of General Warranty, unto Raymond M. Meyer, as Trustee, the lot of land and improvements thereon located in Louisville, Jefferson County, Kentucky, hereinafter described as follows:

"(Description) Said property is to be held in trust by Raymond M. Meyer, as Trustee for Richard H. Hundley, and the income derived therefrom shall be used by Raymond M. Meyer for the use and benefit of Richard H. Hundley during his life. At the death of said Richard H. Hundley said trustee may convey said property in undivided fifths to Richard H. Hundley, Jr., Alfred W. Hundley, Edwin B. Hundley, Mae H. Meyer and Clarence P. Hundley, or to their heirs.

"Likewise said trustee may at any time in his sole discretion sell said property at private sale and hold the proceeds of said sale in trust for the life of said Richard H. Hundley and all or any part of said proceeds may be used for his support.

"Any remainder after the death of said Richard H. Hundley shall be divided in equal parts to the five children of Richard H. Hundley listed hereinabove. * * *."

Appellant, now 85 years old, was taken to the Louisville General Hospital in January, 1952, in a serious condition. Later he was removed by his daughter to the Baptist Hospital where he was operated on for a rupture. While in the hospital he fell and fractured a hip which necessitated another operation.

On March 25, 1952, appellant signed the agreement in question in the presence of his daughter and a notary public. He now claims that he does not remember signing it.

The appellant contends that the circumstances of the execution of the instrument were such as to permit it to be set aside as invalid, because he did not have mental capacity to execute it and, also, because undue influence was exerted upon him by the appellees. Appellant further contends that if the trust is not invalid, its purpose was to protect him from the consequences of his serious illness and to permit the payment of his bills, and now that the purpose has been accomplished, and as he has fully recovered, the agreement should be set aside.

Appellant testified that he suffered great pain while he was in the hospital and was given large doses of medicine and drugs to relieve his suffering. He claims that he was "full of dope" during the period when the instrument was signed.

Dr. J. A. Bowen testified that he treated appellant while he was in the hospital and that the entire drug dosage administered to the appellant was very much on the moderate side and was not at all excessive in any way. He stated that appellant recognized him and knew where he was, but that appellant was mildly confused and toxic. Dr. Bowen expressed some doubt as to whether the appellant was able to understand the force and effect of an agreement he signed.

Thelma Wolke, an employee of Raymond Meyer, acknowledged the signature of appellant on the agreement. She testified that she knew appellant was sick at the time the instrument was signed, but that he "seemed bright."

Appellee Mae Meyer, the daughter of appellant, testified that appellant told her that he was old and knew he was going to die and wanted Ray Meyer to take care of his affairs. She said he wanted Ray to take care of his property and give him the rent. She stated that she consulted her husband's attorney (William Crutcher) and was advised that a deed of trust could be drawn to make Mr. Meyer the trustee and he could manage appellant's affairs. Mrs. Meyer said that she took the agreement to the hospital and read it to the appellant, and that he asked, "Has Ray (Meyer) seen it?" Mrs. Meyer said, "No, he hasn't seen it but he said anything that Bill Crutcher did was all right with him." Appellant said, "Well, if Ray feels that way about it, it is all right with me." Appellant then signed the agreement.

It was also brought out in the testimony of Mrs. Meyer that she has paid two fire insurance bills on appellant's home and that Mr. Meyer has paid taxes on the property and various medical bills, and has otherwise attended to appellant's business affairs in a manner which has met the approval of all concerned.

We do not think that the circumstances surrounding the signing of the trust instrument show that the appellant lacked mental capacity to execute it. We have held that when a grantor understood what he was doing, the deed, if fairly obtained, was valid, notwithstanding the grantor's extreme age or weakened mental condition. It has also been said that although the grantor may be physically unable to look after his property and although his mind may be

enfeebled by age or disease, yet these conditions are not sufficient to render his deed voidable, if such grantor comprehended the meaning, design and effect of his acts at the time of the deed's execution. Newman v. Winter, 303 Ky. 841, 198 S.W.2d 502.

Although appellant had received certain medicines or drugs which might have affected his alertness, we are not disposed to reverse the findings of the Chancellor and say that the evidence conclusively established that appellant was unable to comprehend what he was doing when he executed the instrument. While it is true that appellant testified that he has no recollection of signing the agreement, he nevertheless signed it, and we have no doubt that the transaction was for his best interest.

■ Appellant also contends that the instrument is invalid because undue influence was exerted upon him to obtain his consent to the agreement. The only testimony relating to undue influence is that given by the appellant. He testified that threats were made to him by his children that if he didn't sign a "paper" he would not be buried on the lot beside his wife. The "paper" referred to is not directly related by appellant to the instrument in question and can only be related by inference. He also testified that one of the children threatened to put him in an "old folks' home" but he did not identify the name of the child, nor the time, nor place where it occurred. Evidently he wasn't too concerned about this threat because he said that he knew he wouldn't have to go to such a place.

Apparently the Chancellor was not impressed with his testimony, and in view of other evidence appearing in the case, we do not think it was shown that undue influence was exerted upon appellant in order to obtain the execution of the trust agreement.

■ Appellant's final contention is that even if the instrument is not invalid, the purpose of the trust has been accomplished and the agreement should be set aside. Appellant claims that the trust was created only because of his serious illness, and since he has recovered, he should be able to obtain its cancellation.

We think that the testimony shows that the trust was created not merely because of appellant's serious illness which existed at the time, but also because of his advanced age and the desire of having someone manage his property for him. Although the illness from which he has recovered may have been a motivating force which helped to cause appellant to create the trust, we think that there were other reasons for the trust which have not ceased to exist.

In the case of Fidelity & Columbia Trust Co. v. Gwynn, 206 Ky. 823, 268 S.W. 537, 38 A.L.R. 937, cited by appellant, the settlor was allowed to revoke a trust where it was shown that he had recovered from severe attacks of epilepsy, which disease had prompted the creation of the trust. In that case the court noted that the settlor was the only person in interest so far as the trust agreement was concerned. Here, although the trustee by the terms of the trust has the duty to use the income from the property for the benefit of appellant, he also has the right in his discretion to sell it and hold the proceeds in trust for appellant's lifetime. After appellant's death the remainder is to be divided equally among his children. Therefore appellant is not the only person having an interest in the trust. The Gwynn case is also distinguishable from the case under consideration because in that case the parties agreed that the trust was created because of the settlor's attacks of epilepsy, which made it impossible for him to manage his affairs. Here, there were other reasons (some of which we have not discussed) for the creation of the trust in addition to appellant's illness.

Upon a consideration of the entire record we cannot say that the findings of the Chancellor were clearly erroneous, therefore, we approve the judgment entered by the Chancellor.

Judgment affirmed.